UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

VERED YAKOVEE,

    Plaintiff,

v.

MIAMI HEAT LIMITED
PARTNERSHIP and BASKETBALL
PROPERTIES, LTD., together
d/b/a THE HEAT GROUP,

    Defendant.
_____/

CASE NO.: _____

JURY TRIAL REQUESTED

## COMPLAINT

Plaintiff, VERED YAKOVEE (hereafter "Plaintiff" or "Ms. Yakovee") brings this Complaint seeking damages and equitable relief against Defendant, MIAMI HEAT LIMITED PARTNERSHIP and BASKETBALL PROPERTIES, LTD., together d/b/a THE HEAT GROUP (hereafter collectively referred to as "Defendant" or "The Heat Group"), for interference with and retaliation against her exercise of her rights under the Family Medical Leave Act.

### Jurisdiction and Venue

1. This is an action for compensatory damages in excess of $75,000, exclusive of attorney's fees, interest and costs, brought pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* (hereinafter "FMLA"), and is properly within the jurisdiction of this Court.

2. Ms. Yakovee invokes the federal question jurisdiction of this Court under 28 U.S.C. § 1331.

3. Ms. Yakovee is and was at all times material hereto a resident of Miami-Dade County, Florida, and is in all other ways *sui juris*.

4. The Heat Group are and were at all times material hereto Florida corporate entities with their primary place of business located in Miami, Florida.

5. At all times material to this Complaint, Ms. Yakovee was an "eligible

employee" of The Heat Group in that she had been employed by the Defendant for at least 12 months and worked at least 1,250 hours annually.

6. At all times material to this Complaint, The Heat Group were corporate entities engaged in commerce or an activity affecting commerce with 50 or more employees on its payroll for each working day during each of 20 or more calendar workweeks of 2019.

7. Venue for this action lies in the Southern District of Florida pursuant to the FMLA because Ms. Yakovee resides in, The Heat Group conducts business in, and some or all of the events giving rise to Ms. Yakovee's claims occurred in Miami-Dade County, Florida.

### Arbitration Agreement

8. The Heat Group mandated Ms. Yakovee sign an arbitration agreement as a condition of employment, attached as Exhibit A.

9. The arbitration agreement permits Ms. Yakovee to recover her reasonable attorney's fees under the law; however, it precludes Ms. Yakovee from vindicating her rights under the FMLA as it directs that the arbitrator "shall not" award costs. *See* Ex. A at 2.

10. Under the FMLA, a prevailing plaintiff is entitled to *both* her fees and costs; such an award is not discretionary: "The court in such an action *shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3) (emphasis added).

11. This provision in the arbitration agreement violates the FMLA and therefore prohibits Ms. Yakovee from vindicating her rights. *See Hudson v. P.I.P. Inc.*, --- Fed. Appx. ----, No. 19-11004, 2019 U.S. App. LEXIS 34843, at *5-6 (11th Cir. Nov. 22, 2019) (upholding trial court's determination that clause in arbitration agreement requiring each party to bear their own fees and costs prohibited the plaintiffs from vindicating their rights under the FLSA and was thus unenforceable).

12. The arbitration agreement does not contain a severability provision or a delegation provision permitting an arbitrator to determine the validity of the agreement.

13. This Court must determine whether the offending clause of the arbitration agreement is severable, or whether the agreement as a whole is not enforceable. *See Hudson*, 2019 U.S. App. LEXIS 34843 at *7-8 (remanding to trial court for determination as to whether unenforceable provisions could be severed under Florida law); *see also*, *Shotts v. OP Winter*

*Haven, Inc.*, 86 So. 3d 456, 480-81 (Fla. 2011) (holding that where no delegation provision exists in the arbitration agreement, the court must determine the validity of the contract's provisions).

### Factual Allegations

14. Plaintiff Vered Yakovee began working for The Heat Group in March 2015 as an attorney with the title of Vice President and Associate General Counsel in its offices located inside the AmericanAirlines Arena in downtown Miami, Florida.

15. Ms. Yakovee remained a full-time employee of The Heat Group at all times material hereto.

16. In each and every year of her career with The Heat Group, Ms. Yakovee received an annual pay increase, as well as merit-based bonuses twice every year.

17. In January 2019, Ms. Yakovee received her last performance review prior to her taking FMLA leave. In that review, her immediate supervisor, Raquel Libman, The Heat Group's Executive Vice President and General Counsel, gave her the highest rating possible ("exceeds expectations") in all categories. As a result of that review, Ms. Yakovee received a bonus accordingly.

18. In the fall of 2018, Ms. Yakovee was approved to become an adoptive parent.

19. On the evening of July 9, 2019, Ms. Yakovee received the news that she was selected to adopt a newly born baby.

20. Early the next morning of July 10, 2019, when she informed Ms. Libman of the pending adoption and her need for immediate parental leave, Ms. Libman's response was, "now I definitely won't get to take a vacation," and "what am I gonna do with [your Assistant Counsel]?"

21. In addition to making her displeasure known to Ms. Yakovee, Ms. Libman made her displeasure regarding Ms. Yakovee's maternity leave known to others as well, including other The Heat Group employees and outside counsel.

22. On July 10, 2019 and multiple times thereafter, Ms. Yakovee offered to go to the office for a few days at Ms. Libman's convenience, to ensure she had transitioned matters in an organized and effective manner, and to address any other matter of importance to Ms. Libman. Ms. Libman, on the other hand, declined Ms. Yakovee's offer each and every time.

23. Ms. Yakovee took formal leave beginning on July 11, 2019; she returned to

work twelve (12) weeks later on Thursday, October 3, 2019, as permitted by the FMLA.

24. In early August 2019, Eric Woolworth, the President of Business Operations told Ms. Yakovee via email that Ms. Libman was "upset" in connection with Ms. Yakovee's discussions with him regarding her parental leave benefit, after which point Ms. Libman did not communicate with Ms. Yakovee by any means regarding any topic until Ms. Yakovee returned to work after the conclusion of her leave.

25. On October 3, 2019, the morning of Ms. Yakovee's first day back to work, Ms. Yakovee arrived at the office and was immediately confronted with a lengthy email from Ms. Libman which had been sent earlier that morning at 8:23 a.m., in which Ms. Libman accused Ms. Yakovee of missing deadlines (during her leave), misrepresented a project that Ms. Yakovee worked on before her leave, assigned a new project to Ms. Yakovee, and then promptly cancelled a necessary meeting with others that was required to launch this new project. Ms. Yakovee responded with updates and questions. Ms. Libman never answered any of those questions and never responded to Ms. Yakovee's email at all.

26. Beginning on her first day of returning to work, through to her forced departure on December 19, 2019, Ms. Libman treated Ms. Yakovee with disdain and hostility. She berated Ms. Yakovee and complained about her FMLA leave not only privately, but also publicly in group meetings and on group email correspondence. Ms. Libman also continuously refused to respond to Ms. Yakovee's questions regarding on-going projects.

27. It is customary at The Heat Group for managers to send out a company-wide email announcing the birth of a direct report's child. Ms. Libman never sent, or offered to send, an announcement on behalf of Ms. Yakovee, even though Ms. Yakovee was Ms Libman's direct report.

28. On Friday, October 11, 2019, Ms. Yakovee's co-worker sent a company-wide email announcing Ms. Yakovee's adoption. The following Monday, Ms. Libman's Executive Assistant told the same co-worker, that Ms. Libman was "ripping mad" about the announcement.

29. On Monday, October 14, 2019, Ms. Libman's Executive Assistant told Ms. Yakovee that Ms. Libman was upset with her about her maternity leave, since July, and that Ms. Yakovee should "tread lightly." Ms. Libman's Executive Assistant also indicated that she feared Ms. Libman would become angry with her if Ms. Libman witnessed their

4

conversation.

30. After Ms. Yakovee's return to work, Ms. Libman routinely cancelled weekly meetings with Ms. Yakovee and her group without advance notice or explanation; prior to Ms. Yakovee taking leave, Ms. Libman held a standing weekly one-on-one meeting with Ms. Yakovee every Wednesday at 11:00 a.m. and touted how helpful the meetings were.

31. Ms. Libman also began having one-on-one meetings with Ms. Yakovee's direct report, the Assistant Counsel, without informing Ms. Yakovee.

32. On October 24, 2019, in a group email, Ms. Libman criticized Ms. Yakovee for not having left "any kind of project or status list of [her] work when [she] went out on leave" – even though Ms. Yakovee offered to come in to the office to do so multiple times and Ms. Libman told her not to. In the same email, Ms. Libman denied Ms. Yakovee's request to discuss a necessary matter in an upcoming meeting with that group.

33. Just under an hour later that same day, the Vice President of Human Resources, Sonia Harty, called Ms. Yakovee to her office to meet with her and the Director of Human Resources. They told Ms. Yakovee that Ms. Libman had "self-reported" to HR; however, they did not explain what Ms. Libman "self-reported." They then asked Ms. Yakovee if she thought she was working in a "hostile" work environment. It should be noted that Ms. Libman and Ms. Harty are close friends and maintain a longstanding personal platonic relationship outside of their employment at The Heat Group.

34. Following that meeting, and at Ms. Harty's and the Director of Human Resources' request, Ms. Yakovee provided detailed information regarding the disparate, hostile, and demeaning treatment she was suffering at the hands of Ms. Libman.

35. Meanwhile, in early November 2019, Ms. Libman continued to criticize Ms. Yakovee's work in a wholly unfounded manner. In a group email, Ms. Libman alleged that a license agreement form Ms. Yakovee was instructed to use by Ms. Libman contained an error, when in fact the error she alleged did not exist. Ms. Libman further criticized a sponsorship contract form that Ms. Yakovee was instructed to use by Ms. Libman which Ms. Yakovee had improved upon over the years to Ms. Libman's satisfaction and approval.

36. In mid-November 2019, in a meeting with Ms. Yakovee and her Assistant Counsel, Ms. Libman was pleasant towards and smiling at the Assistant Counsel – even while the Assistant Counsel recounted a project she was running that was off track – while being

antagonistic and hostile to Ms. Yakovee who was relaying the status of her on-time and successful projects. Ms. Yakovee recounted to Ms. Libman that the Vice President of Retail told her that because of Ms. Yakovee's clever negotiating, the Miami Heat were able to capitalize on an exclusive and substantial revenue stream. Ms. Libman made a snide remark and refused to acknowledge Ms. Yakovee's good work in that regard.

37. On November 27, 2019, Ms. Libman called Ms. Yakovee to her office and handed her a new performance review that was, for the first time, critical of her work product, in stark contrast to Ms. Yakovee's prior performance reviews. When Ms. Yakovee attempted to ask questions about the erroneous and unfounded critiques, Ms. Libman said she could not discuss it without Human Resources present because there was an ongoing "investigation" and that Ms. Yakovee did "not understand the consequences of her actions." Notably, performance reviews are not typically provided until January.

38. On December 4, 2019, Ms. Yakovee went to Eric Woolworth, the President of Business Operations' office to express her concern to him about the objectivity of the investigation regarding Ms. Libman and to request an independent neutral investigator evaluate the matter. Mr. Woolworth responded that "Sonia [Harty] mentioned something," but he seemed surprised to hear that Ms. Libman had self-reported and that an investigation was occurring. A week later, he denied Ms. Yakovee's request for an independent neutral investigator.

39. That same day, December 4, 2019, the Director of Human Resources emailed Ms. Yakovee to unjustifiably criticize her for not having provided "enough advance notice" for her FMLA leave.

40. The following week, Ms. Libman instructed Ms. Yakovee to provide her with Ms. Yakovee's performance review of the Assistant Counsel, as Ms. Libman wanted to read and edit it before it was submitted to Human Resources. Ms. Libman's behavior was contrary to The Heat Group's standard business practices for performance reviews.

41. In addition, Ms. Libman continued to directly assign work to the Assistant Counsel without informing Ms. Yakovee, despite having told Ms. Yakovee she would not do so, preventing Ms. Yakovee from effectively undertaking her responsibility for the flow of both her own workload as well as that of her Assistant Counsel.

42. Ms. Yakovee surmises that The Heat Group's refusal to assign an independent

investigator, the unfounded criticisms of her performance by Ms. Libman, and the email correspondence received with respect to her leave many months after the fact, were an effort led by Ms. Libman and supported by Defendant to "litter the file" in order to provide Ms. Libman and Defendant with grounds to continue to harass and retaliate against Ms. Yakovee.

43. On December 17, 2019, Ms. Yakovee asked Ms. Harty and Ms. Libman if a sick day could be used by her to take her sick baby to the doctor. Ms. Yakovee had never taken a single sick day in her entire tenure with The Heat Group and did not know how they worked.

44. On December 18, 2019, with the approval of both Ms. Harty and Ms. Libman, Ms. Yakovee took half of the day off in order to take her sick baby to the doctor.

45. On December 19, 2019, Mr. Woolworth called Ms. Yakovee to his office, told her she was terminated, and to go home immediately.

46. Less than two (2) hours after Ms. Yakovee was terminated and sent home, she received a text message from The Heat Group's outside counsel whose engagement was procured and/or managed by Ms. Libman. The purpose of his communication was to encourage Ms. Yakovee to immediately execute a non-negotiable, "take-it-or-leave-it" General Release and Severance Agreement which would have Ms. Yakovee waive all of her rights in exchange for monetary compensation. Given the circumstances leading up to and including her termination, Ms. Yakovee refused Defendant's attempt to buy her silence and refused to sign it.

47. In accordance with the FMLA, Ms. Yakovee is entitled to recover attorney's fees incurred in the prosecution of this action.

48. Ms. Yakovee has retained the undersigned attorney to represent her in the prosecution of this action and is obligated to pay said attorney a reasonable fee for her professional services.

49. In accordance with the FMLA, Ms. Yakovee is entitled to recover all costs incurred in the prosecution of this action.

### Count I - FMLA Interference

50. Ms. Yakovee realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 49 of this Complaint.

51. From July 11, 2019 through October 2, 2019, Ms. Yakovee took leave for the

adoption of her infant child.

52. Ms. Yakovee engaged in activity protected by the FMLA when she requested and took leave from The Heat Group to adopt and care for her new child.

53. The Heat Group was aware of Ms. Yakovee's right to FMLA-protected leave of absence to adopt and care for her new child.

54. Ms. Yakovee complied with all notice and due diligence requirements of the FMLA.

55. The Heat Group engaged in unlawful employment practices and interfered with Ms. Yakovee's exercise of her FMLA rights by the conduct described above.

56. The Heat Group further engaged in unlawful employment practices and willfully interfered with Ms. Yakovee's exercise of her FMLA rights by terminating her employment.

57. A causal connection exists between Ms. Yakovee's exercise of leave and the termination of her employment by The Heat Group.

58. There are no legitimate or non-discriminatory reasons for Ms. Yakovee's termination by The Heat Group.

59. Ms. Yakovee was injured as a result to The Heat Group's violations of the FMLA, in that she has suffered lost wages, salary, employment benefits and other compensation, and as such, is entitled to legal relief.

WHEREFORE, Plaintiff VERED YAKOVEE demands:

(a) A judgment that The Heat Group interfered with her rights in violation of the FMLA;

(b) Compensation for lost wages, benefits, and other remuneration;

(c) Reinstatement to a position comparable to her prior position with back pay plus interest, pension rights and all benefits, or in the alternative, the entry of a judgment pursuant to 29 U.S.C. Section 2617(a)(1)(A)(i)(II) against The Heat Group for the monetary losses Ms. Yakovee suffered as a direct result of The Heat Group's violation of the FMLA;

(d) Front pay;

(e) Liquidated damages;

(f) Prejudgment interest on all monetary recovery obtained;

(g) All costs and attorney's fees incurred in prosecuting these claims; and

    (h)    Any other such relief as this Court deems just and proper.

## Count II - FMLA Retaliation

60. Ms. Yakovee realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 49 of this Complaint.

61. From July 11, 2019 through October 2, 2019, Ms. Yakovee took leave for the adoption of her infant child.

62. Ms. Yakovee engaged in activity protected by the FMLA when she requested and took leave from The Heat Group to adopt and care for her new child.

63. The Heat Group was aware of Ms. Yakovee's right to FMLA-protected leave of absence to adopt and care for her new child.

64. Ms. Yakovee complied with all notice and due diligence requirements of the FMLA.

65. The Heat Group engaged in retaliatory behavior, in violation of the FMLA, by intentionally terminating Ms. Yakovee's employment.

66. A causal connection exists between Ms. Yakovee's exercise of leave and the termination of her employment by The Heat Group.

67. There are no legitimate, non-discriminatory or non-retaliatory reasons for Ms. Yakovee's termination by The Heat Group.

68. Ms. Yakovee was injured due to Defendant's willful violations of the FMLA, in that she has suffered lost wages, salary, employment benefits and other compensation, and as such, is entitled to legal relief.

WHEREFORE, Plaintiff VERED YAKOVEE demands:

    (a)    A judgment that The Heat Group retaliated against her for attempting to exercise her right to a leave of absence, in violation of the FMLA;

    (b)    Compensation for lost wages, benefits, and other remuneration;

    (c)    Reinstatement to a position comparable to her prior position with back pay plus interest, pension rights and all benefits, or in the alternative, the entry of a judgment pursuant to 29 U.S.C. Section 2617(a)(1)(A)(i)(II) against The Heat Group for the monetary losses Ms. Yakovee suffered as a direct result of The Heat Group's violation of the FMLA;

    (d)    Front pay;

    (e)    Liquidated damages;

(f) Prejudgment interest on all monetary recovery obtained;

(g) All costs and attorney's fees incurred in prosecuting these claims; and

(h) Any other such relief as this Court deems just and proper.

### Demand for Jury Trial

Plaintiff VERED YAKOVEE, by and through her undersigned attorney, hereby demands a jury trial pursuant to Federal Rule of Civil Procedure 38 on all issues triable of right by jury in this action.

Respectfully submitted,

DEUTSCH ROTBART & ASSOCIATES, P.A.
Counsel for Plaintiff

BY: *s/Erika Deutsch Rotbart*
Erika Deutsch Rotbart, Esq.
Florida Bar No.: 0047686
4755 Technology Way, Suite 106
Boca Raton, FL 33431
Telephone: 561.361.8010
E-mail: edrotbart@dralawfirm.com