**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:20-CV-20540-FAM**

VERED YAKOVEE,                              )
                                 )
        Plaintiff,                       )
                                 )
v.                                         )
                                 )
MIAMI HEAT LIMITED PARTNERSHIP             )
and BASKETBALL PROPERTIES, LTD.,           )
together d/b/a THE HEAT GROUP,             )
                                 )
        Defendant.                       )

**DEFENDANT'S MOTION TO COMPEL**
**ARBITRATION, AND TO ABATE, OR IN THE ALTERNATIVE**
**TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Defendant MIAMI HEAT LIMITED PARTNERSHIP and BASKETBALL PROPERTIES, LTD., together d/b/a THE HEAT GROUP ("Defendant" or "The Miami Heat") pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-14, and S.D. Fla. L. R. 7.1, hereby moves this Court for an order compelling arbitration of the claims filed by Plaintiff VERED YAKOVEE ("Plaintiff" or "Yakovee") and to abate, or in the alternative, to dismiss Plaintiff's claims in this case pending the arbitration[1]. In support of its Motion, The Miami Heat submits the following Memorandum of Law:

    **I.**    **PLAINTIFF FILED THE COMPLAINT IN VIOLATION OF HER ARBITRATION AGREEMENT, IN VIOLATION OF LAW, AND FOR AN IMPROPER PURPOSE**

By filing this frivolous and factually deficient lawsuit, Plaintiff attempts to circumvent

---

[1] Defendant is not seeking any affirmative relief and nothing in this motion should be construed as requesting anything other than relief based upon the arbitration agreement of the parties that expressly governs FMLA claims. Despite the existence of other grounds to oppose the Complaint, this motion is limited so as to avoid claims by Plaintiff of a waiver of her contractual agreement to arbitrate her FMLA claims.

the arbitration agreement she knowingly[2] entered into with The Miami Heat (the "Arbitration Agreement"), wherein she expressly agreed to resolve Family Medical Leave Act ("FMLA") disputes in an arbitration. In turn, under the guise of litigation, Plaintiff endeavors to tarnish The Miami Heat's merited reputation by littering this Court, and in turn the press[3], with unsupported falsehoods and mischaracterizations[4] in the hopes of obtaining leverage against Defendant. Plaintiff's lawsuit is filed in violation of the Arbitration Agreement, in clear contravention of federal law, and for an improper purpose. It is clear beyond cavil that Plaintiff's Complaint is a manufactured, untruthful narrative designed to conceal the legitimate facts: Plaintiff was a

---

[2] Plaintiff is an attorney who maintained the position of Vice President and Associate General Counsel for The Miami Heat—thus, it is indisputable that she knowingly entered into and fully appreciates her obligations under the Arbitration Agreement.

[3] In truth, Plaintiff seeks to obtain money by threatening embarrassment to The Miami Heat and the National Basketball Association by spreading lies to the media that the team is inhospitable to new parents. *See, e.g.*, Michael Mccann, *Analyzing the Case: Attorney Sues Heat, Claims Team Fired Her For Taking Parental Leave*, Sports Illustrated (Feb. 19, 2020), https://www.si.com/nba/2020/02/20/miami-heat-lawsuit-maternity-leave ("Team officials may be concerned that they'll be portrayed as insensitive" . . . "NBA officials obviously do not wish to see one of their franchises accused of mistreating a new parent. It would not be surprising if those officials urged the Heat to seriously explore settlement opportunities with [Plaintiff]."). Plaintiff wants to publish untruthful statements that make her look good and The Miami Heat look bad in the only forum where she cannot be sued for her malicious and defamatory statements, as her pleadings are protected by the legal doctrine of "Litigation Privilege". *See also* David Ovalle, *Former Miami Heat Lawyer Sues Team, Claims She Was Fired For Taking Maternity Leave*, The Miami Herald (Feb. 14, 2020), https://www.miamiherald.com/sports/nba/miami-heat/article240261286.html; Julia Jacobo, *Former Miami Heat Lawyer Claims She Was Fired For Going On Maternity Leave*, ABC News (Feb. 16, 2020), https://abcnews.go.com/US/miami-heat-lawyer-claims-fired-maternity-leave/story?id=69017351; Dan Feldman, *Former Heat Executive Suing Team For Alleged Backlash To Maternity Leave*, NBC Sports (Feb. 14, 2020), https://nba.nbcsports.com/2020/02/14/former-heat-executive-suing-team-for-alleged-backlash-to-maternity-leave/.

[4] Plaintiff claims, at paragraph 46 of her Complaint, that less than two hours after she was terminated by The Miami Heat, outside counsel contacted her to immediately sign a "non-negotiable, take it or leave it" agreement in an "attempt to buy her silence." In fact, as with virtually every sentence in her Complaint, she intentionally mischaracterizes the message and related facts. It was in fact Plaintiff, who at 5:51 pm on the date of her termination, had her lawyer send The Miami Heat an email demanding a non-disparagement agreement and further demanded multiple years of salary and benefits. As to the alleged message Plaintiff was sent by outside counsel, there was no mention whatsoever of "buying silence". The Miami Heat **did not**, as Plaintiff falsely alleges, contact her two hours after her termination in an effort to buy her silence.

disruptive, toxic, and sub-standard employee who single-handedly consumed more attention from Human Resources and senior management than any other individual employee; and that Plaintiff's employment was rightfully and properly terminated by The Miami Heat on December 19, 2019. The fact that five (5) months prior, on July 10, 2019, Plaintiff took leave pursuant to the FMLA was neither considered, contemplated, nor correlated to The Miami Heat's decision to terminate Plaintiff—The Miami Heat's decision was **exclusively** based on Plaintiff's deficient attitude, disruptive behavior, and sub-standard performance.

While Plaintiff's Complaint falsely alleges she was an exemplary employee who worked well with her colleagues, in reality, Plaintiff was temperamental, condescending, and behaved in ways that showed a lack of self-awareness towards her subordinates, colleagues, and superiors alike.

In fact, Plaintiff's Complaint ignores the reality that her superiors were critical of her behavior and performance **prior** to her FMLA leave in July 2019. Plaintiff's shortfalls, addressed in June 2019 with the Plaintiff and included in Plaintiff's 2019 mid-year review, continued **after** her return from FMLA leave in the Fall of 2019, and negatively impacted senior management and The Miami Heat's legal department.

Following a series of complaints made to senior management and Human Resources against Plaintiff, including complaints from Plaintiff's direct reports, as well as repeated failures and indiscretions by Plaintiff that negatively affected management, Plaintiff was notified of her termination in December 2019 by Mr. Eric Woolworth, President of Business Operations ("Mr. Woolworth"). Mr. Woolworth, at wit's end, made the decision to terminate the Plaintiff after balancing the needs of the entire Miami Heat legal department against the inadequate work and reprehensible behavior of Plaintiff.

While The Miami Heat has no intention of addressing all of Plaintiff's many shortcomings as an employee, or highlighting each and every false statement in the Complaint, a few examples are appropriate to illustrate the purely misleading and dishonest nature of the Complaint.[5]

To begin, Plaintiff riddles her Complaint with multiple allegations that falsely portray The Miami Heat and Ms. Libman's attitude as one of disdain and hostility towards Plaintiff's FMLA leave to care for her newly adopted child. In fact, nothing could be farther from the truth.

---

[5] Some of the most notable examples are:

On June 21, 2019, approximately three weeks **prior** to Plaintiff giving The Miami Heat notice of her FMLA leave, and by her own admission, before FMLA leave was anticipated by Plaintiff herself, Ms. Libman submitted Plaintiff's mid-year review (the "Mid-Year Review"). The Mid-Year Review goes into detailed commentary of how Plaintiff's comportment and work-product were not only unsatisfactory, but also unacceptable, including:

- " . . . [**Y**]**our communication style is not always received the way you intend and it causes issues for the department and far more frequently than I would expect and hope.**"

- "Unfortunately, we've had a set[-]back in terms of feedback I am receiving from others regarding **continued challenges of working with you in terms of timeliness of your work, your ability to provide advice regarding more complex business matters and fear of retribution if people address these matters with you[] directly and/or in a way that offends you**."

Similarly, Plaintiff was also counseled by her supervisor in a meeting prior to Plaintiff's summer vacation and prior to Plaintiff's FMLA leave. In that meeting, Plaintiff was notified that she had failed to progress sufficiently as a lawyer during her four (4) years of employment and that efforts to help her develop had not been successful. Plaintiff was further notified prior to making a request for FMLA leave that she would be relegated to the basic "bread and butter" legal work expected of a junior associate. It is noteworthy that at this same meeting, Plaintiff acknowledged that she could never get more than 80% of her work done.

In reality, Ms. Libman and The Miami Heat were supportive of Plaintiff's FMLA leave, and Plaintiff is fully cognizant that her characterizations and allegations are false.[6]

While the Plaintiff has no facts nor basis in law to prevail in this action, it is patently evident that this lawsuit was filed in violation of the Arbitration Agreement and for an improper purpose—to obtain a premature trial through press and public speculation. Regardless, the Plaintiff has the burden of proving her case against The Miami Heat before a neutral arbitrator, such as she expressly agreed to do pursuant to the Arbitration Agreement.

As this Court is aware, under controlling authority, arbitration is strongly favored and all the requirements to compel arbitration are met here. Plaintiff does not contest that she entered into

---

[6] Some examples relating to how The Miami Heat and Ms. Libman truthfully reacted to Plaintiff's FMLA leave, in contrast to the false allegations in the Complaint, are:

- On July 10, 2019, within two hours of notifying Ms. Libman that she would be taking FMLA leave Plaintiff sent Ms. Libman an email that opened with: **"Thank you for your good wishes this morning when I shared my adoption news."** Hours later she sent Ms. Libman another email that said "[t]hank you for the good conversation and time on the phone too, which I know you don't have much of."

- On July 10, 2019, Plaintiff stated to Ms. Libman that [she knows] Ms. Libman would want to be her champion to get the newly approved, but not yet in effect, parental leave policy, implemented retroactively so that she could receive pay while on leave. Ms. Libman conveyed her support for the retroactive pay to Ms. Libman's immediate boss, Mr. Woolworth, and the Human Resources Department.

- On September 9, 2019, and following several discussions on the subject with Plaintiff, Mr. Woolworth informed Plaintiff **that the new parental leave policy** was being enacted by the Miami Heat effective October 1, 2019, which would **retroactively apply** for one year to October 1, 2018, and as a result, Plaintiff would benefit from it despite her FMLA leave being almost complete.

- On October 3, 2019, while at the hospital with her terminally ill mother, Ms. Libman emailed Plaintiff, "Good morning and welcome back!" advising her that pending work had been taken care of so that Plaintiff was not returning to "overdue assignments or crises."

While unfortunate that Plaintiff has chosen to file false allegations against The Miami Heat, it is clear that Plaintiff's Complaint knowingly mischaracterizes what truly took place between Plaintiff and The Miami Heat.

the Arbitration Agreement[7]. The Arbitration Agreement's plain terms delegate the authority to decide arbitrability and all other scope issues to the arbitrator. Further, the Arbitration Agreement's provisions **specifically incorporate FMLA claims**, and there is no indication that Defendant has waived its right to arbitrate same. Accordingly, the Court should grant this Motion, compel arbitration of Plaintiff's claims, and abate, or in the alternative, dismiss the Complaint.

## II.   PLAINTIFF KNOWINGLY AGREED TO ARBITRATION

Plaintiff was employed by The Miami Heat as an attorney with the title of Vice President and Associate General Counsel from March 2015 until December 19, 2019. Complaint ("Compl."), ¶¶ 14, 45. Plaintiff's claims are based on frivolous allegations that The Miami Heat terminated her in violation of the FMLA, for exercising her right of leave under that statute. *Id.* ¶¶ 50-68.

At the commencement of her employment with The Miami Heat, Plaintiff executed an Arbitration Agreement. Compl., ¶ 8, Ex. A. The Arbitration Agreement states that "[a]ll arbitration proceedings shall be administered by the American Arbitration Association ("the AAA") under its appropriate rules of procedure." *Id.* at ¶ 1. It further provides that "[t]he Heat Group and the Employee whose name is shown in the signature block below have agreed to arbitration of any controversy arising out of or relating to the employment relationship or the termination of that relationship, as well as any other claim arising in the workplace environment, **to the exclusion of all other forms of dispute resolution**." *Id.* The Arbitration Agreement, in relevant part, defines the term "controversy" broadly, to mean:

> all claims, disputes, actions or issues of which the employee is or should be aware at the time a demand for arbitration is made and which are related to or arise out of the employment relationship or the employment environment. This term includes, but is not limited to, all common law or statutory causes of action, all actions in tort

---

[7] Plaintiff has attached the Arbitration Agreement as Exhibit A to her Complaint; *see also* Compl., ¶ 8.

or contract, and all claims that may be brought under . . . **the Family and Medical Leave Act**, . . . and any other similar local, state, and federal statute or regulation.

*Id.* at ¶ 2.

The Arbitration Agreement makes the arbitration process very convenient to Plaintiff by, among other things, (i) locating the arbitration in Miami-Dade County, the city of Plaintiff's residence; and (ii) requiring The Miami Heat to bear the arbitrator's fee. *Id.* at ¶ 5, 6.

### III.   LEGAL ARGUMENT

#### A.  The Federal Arbitration Act Reflects a Strong Policy Favoring Arbitration and Governs This Dispute.

The United States Supreme Court has specifically held "that the FAA is applicable to all contracts of employment except those contracts involving transportation workers." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1314 (11th Cir. 2002) (citing *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001)); *Melo v. Falls Mgmt. Services Co.*, No. 18-62435-CIV-Martinez/Snow, 2019 WL 5291007, at *2 (S.D. Fla. July 11, 2019) ("As Supreme Court precedent makes clear, a worker engaged in commerce is not able to avoid the mandatory arbitration provisions of the FAA unless that worker is a transportation worker . . ."). There is no dispute by the Parties in this case that Plaintiff was not employed by The Miami Heat as a transportation worker, but instead as an attorney with the title of Vice President and Associate General Counsel. Compl., ¶ 14. Thus, the FAA applies to Plaintiff's claims.

The FAA mandates that all arbitration agreements (with limited exceptions not pertinent here) "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a "liberal federal policy favoring arbitration agreements." *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (citation omitted). Indeed, "courts rigorously enforce arbitration agreements." *Picard v. Credit*

*Solutions, Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (internal citation and quotations omitted). Thus, all doubts concerning the scope of an arbitration provision are resolved in favor of arbitration. *Granite Rock. Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 298 (2010) (noting that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration); *Solymar Inv., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (same).

The FAA provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** *on application of one of the parties stay*[8] *the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .*" 9 U.S.C. § 3 (emphasis added); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) ("By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *John B.*

---

[8] The United States Supreme Court and the Eleventh Circuit Court of Appeals have both recognized that dismissal of litigation in favor of arbitration is also proper in certain instances. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000); *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1335-36 (11th Cir. 2014) (affirming the district court's order dismissing the complaint and compelling arbitration of FLSA claims); *Caley*, 428 F.3d at 1378 (same); *Emp'rs Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1321 (11th Cir. 2001) (recognizing that the dismissal of an action in favor of arbitration was appropriate). Where, as herein, all the claims before the court are subject to arbitration, the considerations weigh in favor of dismissal. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Senior Servs. of Palm Beach LLC*, 12-80226-CIV, at *8 ("[A]s all claims in this action are subject to arbitration, the Court will dismiss the case rather than stay it."); *see, e.g.*, *Hamlett v. Owners Advantage, LLC*, 13-80416-CIV, 2013 WL 4711165, at *4 (S.D. Fla. Aug. 30, 2013) (dismissing plaintiff's action because plaintiff had an enforceable agreement to arbitrate his FLSA claims); *La Torre v. BFS Retail & Commercial Operations, LLC*, No. 08-22046-CIV-SEITZ, 2008 WL 5156301, at *6 (S.D. Fla. Dec. 8, 2008) (same); *Chapman v. Lehman Bros., Inc.*, 279 F. Supp. 2d 1286, 1290 (S.D. Fla. 2003) (same). Because the two FMLA claims alleged in the Complaint are subject to binding arbitration, the Court may abate the action or elect to dismiss the Complaint.

*Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court **must** grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.") (emphasis added).

"In reviewing a motion to compel mediation and/or arbitration, a district court considers three factors: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011). Here, the Parties formed an enforceable Arbitration Agreement and the Parties have delegated the issue of arbitrability to the arbitrator. Even assuming *arguendo*, that the Court decides that the issue of arbitrability should remain within the jurisdiction of the Court, Plaintiff's FMLA claims fit within the scope of the Arbitration Agreement, and are thus, clearly arbitrable. Further, The Miami Heat has not waived its right to arbitrate. Therefore, the Court should abate, or in the alternative, dismiss this action and compel arbitration of Plaintiff's claims.

### 1.  A Valid Agreement to Arbitrate Exists.

Whether the Parties have agreed to arbitrate a dispute is governed by ordinary contract principles. *Fisher v. PNC Bank, N.A.,* No. 18-22974-CV-Moreno/Louis, 2019 WL 5260282, at *4 (S.D. Fla. Aug. 12, 2019). "Under Florida law, the party seeking to enforce an arbitration agreement must prove the existence of a contract by establishing (1) an offer; (2) an acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Id* (internal citations omitted). "The party seeking to enforce a contract bears the burden of showing the existence of that contract." *Id.* However, "[w]hen confronted with a facially valid arbitration agreement, the party resisting arbitration bears the burden of submitting evidence to support such denial." *Id.*

It is clear that the Arbitration Agreement is valid. *See Olazabal v. Serv. Keepers, Maint., Inc.*, No. 17-20660-CIV-LENARD, 2017 WL 2171842, at *2 (S.D. Fla. April 5, 2017) (written Arbitration Agreement signed by employee was a valid agreement to arbitrate). First, the Parties' assent is evidenced by their signatures on the Arbitration Agreement. Compl., Ex. A., p. 3; *see D.L. Peoples Grp., Inc. v. Hawley*, 804 So. 2d 561, 563 (Fla. 1st DCA 2002) ("Where one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results."). Secondly, there is valid consideration, as the Arbitration Agreement states, in part "[t]he Employee acknowledges by his/her signature below that employment by The Heat Group or any affiliate is sufficient consideration for the employee's agreement to arbitrate and to forsake other procedures and forums for the resolution of controversies, including all courts." Compl., Ex. A, ¶ 3; *see Auyre v. Braman Motors*, No. 14-20399-CIV-MOORE-MCALILEY, 2014 WL 12860812, at *4 (S.D. Fla. Sept. 16, 2014) ("Courts have held that an employer's continued employment of an employee is adequate consideration to support the arbitration agreements."). Additionally, the Parties' mutual promises to arbitrate serve as sufficient consideration. *See Santos v. Gen. Dynamics Aviation Servs. Corp.*, 984 So. 2d 658, 661 (Fla. 4th DCA 2008) (sufficient consideration to support a dispute resolution plan where agreement created a mutual obligation to arbitrate). Further, the Parties' assent to a certain and definite proposition, is evidenced by the express terms of the Arbitration Agreement, which specifically provide that the Parties have agreed to arbitration of FMLA claims and which incorporate the AAA rules of procedure. Compl., Ex. A, ¶ 1; *see Greenbrook NH, LLC v. Estate of Sayre, ex. Rel Raymond*, 150 So. 3d 878, 881 (Fla. 2d DCA 2014) ("The terms must be definite enough so that the parties have some idea as to what matters are to be arbitrated and provide some procedure by which arbitration is to be effected.") (internal citations omitted).

10

Most importantly, however, Plaintiff has attached the valid Arbitration Agreement to her Complaint, and does not deny that the Arbitration Agreement is valid. *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement if there is no genuine dispute as to any material fact concerning the formation of such an agreement); *see also CaringOnDemand, LLC v. Ventive LLC*, No. 18-cv-80211-BLOOM/Reinhart, 2018 WL 3093543, at *3 (S.D. Fla. June 22, 2018) ("It is undisputed that the parties entered into a valid written agreement containing an arbitration clause. Significantly neither party challenges the validity of the agreement . . ."). Thus, a valid arbitration agreement exists.

## 2.   The Parties Delegated the Issue of Arbitrability to the Arbitrator.

Authority from the Eleventh Circuit and Supreme Court confirms that the delegation clause in the Arbitration Agreement assigns the issue of arbitrability to the arbitrator along with any of Plaintiff's arguments for non-arbitrability.[9] "When an arbitration agreement evidences a 'clear and unmistakable' intent by the parties to arbitrate threshold questions of arbitrability, the court 'possesses no power to decide the arbitrability issue.'" *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2019 WL 6838631, at *4 (S.D. Fla. Sept. 26, 2019) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30 (2019)). "Upon finding that an arbitration agreement delegates these determinations to the arbitrator, a court must refer to the arbitrator all defenses to the enforcement of the arbitration provision, including issues involving

---

[9] As a valid agreement to arbitrate exists, it is proper for the Court to consider the delegation provision in the Arbitration Agreement. *Seminole Cty. Tax Collector v. Domo, Inc.*, No. 6:18-CV-1933-Orl-40DCI, 2019 WL 1901019, at *9 (M.D. Fla. Feb. 13, 2019) ("Having found that a valid agreement to arbitrate exists between the parties, the Court now considers the application of the delegation provision within the arbitration clause."), *report and recommendation adopted*, No. 6:18-CV-1933-ORL-40-DCI, 2019 WL 1772108 (M.D. Fla. Apr. 23, 2019), *appeal docketed*, No. 19-11782 (11th Cir. May 7, 2019).

scope and validity." *Id* (citing *Given v. M&T Bank Corp.*, 674 F.3d 1252, 1256–57 (11th Cir. 2012). "The Eleventh Circuit has consistently held that '[b]y incorporating the AAA rules' into an arbitration agreement, 'parties clearly and unmistakably agree [] that the arbitrator should decide whether the arbitration clause is valid.'" *Id* (citing *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). Further, "the Eleventh Circuit has confirmed that the parties do not need to identify the precise set of AAA rules to be used in order to establish delegation." *Id.* at *5 (citing *JPay, Inc. v. Kobel*, 904 F.3d 923, 936-38 (11th Cir. 2018)) (confirming that incorporation of any AAA rules containing delegation language "alone serves as a clear and unmistakable delegation of questions of arbitrability to an arbitrator").

The Arbitration Agreement states, in relevant part, "[a]ll arbitration proceedings shall be administered by the American Arbitration Association ("the AAA") under its appropriate rules of procedure."[10] Compl., Ex. A, ¶ 1. Pursuant to this clause, the Parties have undoubtedly agreed to delegate the issue of arbitrability to the arbitrator. *See, e.g., Senior Services of Palm Beach LLC v. ABCSP Inc.*, No. 12-80226-CIV, 2012 WL 2054971, at *3 (S.D. Fla. June 7, 2012) (where parties' arbitration clause stated that arbitration "shall be conducted by the American Arbitration Association [("AAA")] in accordance with the rules of the [AAA]" the issue of arbitrability was delegated to the arbitrator); *Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.,* 670 F. Supp. 2d 1350, 1354–55 (S.D. Fla. 2009) (finding "clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability of the claims to an arbitrator" based on the incorporation of certain arbitration rules). Therefore, pursuant to the

---

[10] Rule 8(a) of the AAA Commercial Arbitration Rules states "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.";  Rule 6(a) of the AAA Employment Arbitration Rules also states that "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

language of the Arbitration Agreement, the issue of arbitrability and all other scope issues should
be deferred to the arbitrator.

**3. Assuming *Arguendo* That the Issue of Arbitrability Should Not Be
Delegated to the Arbitrator, Plaintiff's FMLA Claims Are Still
Subject to Arbitration Under the FAA.**

*a. Plaintiff's FMLA Claims Fall Within the Scope of the
Arbitration Agreement.*

Assuming *arguendo* that this Court determines that the issue of arbitrability should not be
delegated to the arbitrators, the second factor into the issue of arbitrability is nonetheless satisfied
here. Plaintiff has agreed to arbitrate "any controversy arising out of or relating to the employment
relationship or the termination of that relationship, as well as any other claim arising in the
workplace environment, to the exclusion of all other forms of dispute resolution." Compl., Ex. A.,
¶ 1. Further, the Arbitration Agreement defines "controversy" to include all claims, disputes,
actions or issues under the FMLA, among other statutes. *Id.* at ¶ 2. Courts have repeatedly held
that **FMLA claims are arbitrable** under similar, albeit less explicit provisions, which do not
specifically list FMLA claims as fitting within the scope of the arbitration agreement. *See, e.g.,
Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *2
(M.D. Fla. Nov. 12, 2019), *appeal docketed* No. 19-14935 (11th Cir. 2019) (finding FMLA claim
arbitrable where arbitration agreement included claims that "arose out of or related" to the
employment agreement, but did not specifically list FMLA claims); *Booth v. S. Wine and Spirits
of Am., Inc.*, No. 14-22357-CIV, 2014 WL 5523123, at *2-3 (S.D. Fla. Oct. 21, 2014) (FMLA
claim was subject to arbitration where arbitration agreement provided that "the sole and exclusive
remedy for any dispute, claim or controversy arising out of this Agreement shall be a
binding arbitration . . . "); *Legrand v. Cintas Corp. No. 2*, No. 10-62476-CIV-Seitz/O'Sullivan,
2011 WL 13217283, at *2 (S.D. Fla. April 5. 2011) (FMLA claims fell within the scope of

arbitration agreement including "any dispute or difference . . . concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this Agreement," although language did not include but also did not exclude FMLA claims). Thus, Plaintiff's FMLA claims fits squarely within the scope of the Arbitration Agreement.

        b.   *The Fees and Costs Provision in the Arbitration Agreement Does Not Violate the FMLA, and Thus, Does Not Prevent Plaintiff From Vindicating Her Rights.*

In a flagrant attempt to avoid her contractual obligations, Plaintiff alleges that the Arbitration Agreement is unenforceable by relying on misstatements of both the language in the Arbitration Agreement and Eleventh Circuit law. Compl., ¶¶ 8-13. Pursuant to the FMLA, a prevailing plaintiff is entitled to both her attorney's fees and costs. 29 U.S.C. § 2617(a)(3). Plaintiff argues that the language in the Arbitration Agreement permits Plaintiff to recover her reasonable attorney's fees under the law, but precludes her from being awarded costs, should she prevail. Compl., ¶ 9. Plaintiff cites to *Hudson v. P.I.P. Inc.*, No. 19-11004, 2019 U.S. App. LEXIS 34843, at *5-6 (11th Cir. Nov. 22, 2019), for the proposition that an arbitration agreement requiring each party to bear their own fees and costs prohibited the plaintiffs from vindicating their rights under the FLSA, and was thus unenforceable. Compl., ¶ 11.

First, Plaintiff fails to recognize that the fees and costs provision that was deemed unenforceable in the *Hudson* arbitration agreement is entirely incomparable to the provision in the Arbitration Agreement herein. Namely, the provision in *Hudson* read, in relevant part, "[e]ach party to any arbitration will pay its own fees and expense, including attorney fees and will share other fees of arbitration." *Id.* at *1. In its decision in *Hudson*, the Court clarified that a loser's pay provision **did not** defeat the remedial purpose of a statute providing for attorney's fees and costs because "a plaintiff, if successful would still be awarded fees and costs as provided by the statute."

*Id.* at \*2. The fees and costs provision in *Hudson*, however "defeat[ed] the purpose of the FLSA's attorney's fees and costs provisions" because "a ***mandatory*** 'pay your own' fees and costs clause removes the arbitrator's ability to award a plaintiff what is provided by statute if the plaintiff is successful." *Id* (emphasis added).

On the other hand, the provision in the Arbitration Agreement states, in relevant part, "[a] prevailing party in an arbitration may be awarded reasonable fees pursuant to any applicable statute. The arbitrator **shall not otherwise** award attorney's fees or costs" (the "Fees and Costs Provision"). Compl., Ex. A., ¶ 6. Unlike in *Hudson*, where the fees and costs provision **mandated** each party to pay its own attorney's fees and costs, the provision herein is not analogous—Plaintiff can clearly recover her attorney's fees and costs pursuant to the Arbitration Agreement should she be successful in this action. If Plaintiff is unsuccessful on her FMLA claims, then she would not be entitled to attorney's fees and costs to begin with. *See Spinelli v. Dascor Corp.*, No. 19-cv-60857-BLOOM/Valle, 2019 WL 3425080, at \*5 (S.D. Fla. July 30, 2019) ("When the possibility of a claimant being deprived of a statutory right hinges on the result of arbitration, the arbitration agreement will be enforced . . . if [plaintiff] were not the prevailing party at arbitration she would not be entitled to attorney's fees or costs pursuant to the FLSA . . . [i]n that circumstance the requirement that [plaintiff] . . . potentially bear her own attorneys' fees would not deprive her of a rights under the FLSA."); *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at \*8 (M.D. Fla. 2008) (holding that so long as the arbitrator followed the applicable law as to awarding fees and costs in FMLA action, Plaintiff's remedial rights would not be restricted). The Fees and Costs Provision in the Arbitration Agreement is more similar to a loser's pay provision, which *Hudson* clarified is not unenforceable. Better yet, the provision in the Arbitration Agreement is more beneficial and less prohibitive to Plaintiff than a loser's pays

provision, as it allows her to recover her attorney's fees and costs if she were to prevail, yet does not require her to pay The Miami Heat's attorney's fees and costs should her claims fail.

Furthermore, while Plaintiff makes disingenuous allegations that pursuant to the Arbitration Agreement the arbitrator "shall not" award costs, Compl., ¶ 9, this is manifestly contradicted by the language of the Arbitration Agreement and by Florida's rules of contract interpretation. "Arbitration agreements are governed by general contract law, and courts must 'discern the intent of the parties from the language used in their agreement.'" *Ap't Inv. and Mgmt. Co. v. Flamingo/South Beach 1 Condo. Ass'n, Inc.*, 84 So. 3d 1090, 1092 (Fla. 3d DCA 2012) (internal citations omitted). The case law in Florida is clear that "[w]hen interpreting contractual provisions, courts 'will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so.'" *Bethany Trace Owners' Ass'n, Inc. v. Whispering Lakes I, LLC*, 155 So. 3d 1188, 1191 (Fla. 2d DCA 2014) (internal citations omitted); *Am. K-9 Detection Services, Inc. v. Cicero*, 100 So. 3d 236, 238-9 (Fla. 5th DCA 2012) ("In interpreting a contract courts must not read a single term or group of words in isolation"— instead, "'the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose.'").

While Plaintiff intends for this Court to ignore the entire second sentence of the Fees and Costs Provision, except the words "the arbitrator", "shall not", "award", and "costs", that adoption would be in contravention of Florida law. *See Saha v. Aetna Cas. & Sur. Co.*, 427 So. 2d 316, 317 (Fla. 5th DCA 1983) ("The courts cannot rewrite contracts, add meaning that is not present or otherwise reach results contrary to the intentions of the parties.").

The word "otherwise" plainly means "in a different way or manner" or "in different circumstances". *Otherwise*, MERRIAM-WEBSTER'S DICTIONARY (2019); *see also Golf Scoring Sys.*

16

*Unlimited, Inc. v. Remedio,* 877 So. 2d 827, 829 (Fla. 4th DCA 2004) ("When interpreting a contract, a court should give effect to the plain and ordinary meaning of its terms . . . . 'words should be given their natural meaning or the meaning most commonly understood in relation to the subject matter and circumstances, and reasonable construction is preferred to one that is unreasonable.'"). In order to give the word "otherwise," in the second sentence of the Fees and Costs Provision, its natural and intended meaning, attorney's fees **and costs** must be recoverable when different circumstances than those named in that sentence are present. Specifically, those circumstances are described in the first sentence of the Fees and Costs Provision, which states that "[a] prevailing party in an arbitration may be awarded reasonable fees pursuant to any applicable statute." Plaintiff's interpretation would render the entire second sentence of the Fees and Costs Provision, save four words, superfluous, and thus, cannot stand under Florida contract principles[11].

> c. *Should the Court Render the Fees and Costs Provision in the Arbitration Agreement to Be Unenforceable, it is Severable, and thus, the Arbitration Agreement is Still Enforceable.*

"Under Florida law, an unenforceable portion of a contract can be severed, or eliminated, as long as the unenforceable provision does not go to the 'essence' of the parties' agreement." *Smith v. Physicians United Plan, Inc.*, No. 14-60534-Civ-Scola, 2014 WL 12797219, at *2 (S.D. Fla. Dec. 19, 2014) (citing *Local No. 234* of *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953)); *see also Northport Health Services of Florida, LLC v. Louis*, 240 So. 3d 120, 123 (Fla. 5th DCA 2018) ("[T]he dispositive issue of whether a void clause or clauses invalidate an

---

[11] The intent of the Arbitration Agreement's Fees and Costs Provision, namely, that it would allow a prevailing party to obtain attorney's fees and costs under applicable law, such as the FMLA, is further evidenced by the separate clause in the agreement stating that other than the application of the appropriate rules of the AAA, "[t]he substantive rights of the parties under applicable law are not otherwise affected." Compl., Ex. A, ¶ 1.

entire arbitration agreement is whether the offending clause goes to the very essence of the agreement."). Further, the law is clear that an arbitration agreement that contains an unenforceable remedial restriction is not null and void simply because it does not also contain a severability clause. *Terminix Int'l Co., LP v. Palmer Rach Ltd. P'ship*, 432 F. 3d 1327, 1331 (11th Cir. 2005); *Distribuidora de Vehiculos S.A. v. John Deere Constr. & Forestry Co.*, No. 12-20983-CV, 2012 WL 13014702, at *6 (S.D. Fla. June 13, 2012) (internal citation omitted) ("[W]here an agreement includes an invalid and unenforceable provision, Florida courts do not require a severability clause to save the legal portions of the contract."); *J.R.D. Mgmt. Corp. v. Dulin*, 883 So. 2d 314, 316 (Fla. 4th DCA 2004) (explaining that the question of severability turns on whether the contract is "severable in nature," not whether a severability clause is present).

Florida courts have specifically analyzed, and repeatedly held that void attorney fee provisions can be severed from arbitration agreements, without rendering the agreement unenforceable. *Fonte v. AT&T Wireless Services, Inc.*, 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005) (holding that a void provision prohibiting an award of attorney's fees could be severed from the agreement without affecting the intent of the parties to arbitrate.); *Hochbaum ex rel. Hochbaum v. Palm Garden of Winter Haven, LLC*, 201 So. 3d 218, 222-23 (Fla. 2d DCA 2016); *Rockledge NH, LLC v. Miley By and Through Miley*, 219 So. 3d 246, 249 (Fla. 5th DCA 2017).

Pursuant to the aforementioned, even without a severability provision, Florida law dictates that the Court may sever the Fees and Costs Provision (assuming *arguendo* that the Court holds that same is unenforceable), as it does not go to the "essence" of the Parties' agreement. Even if the Fees and Costs Provision was entirely removed from the agreement, the Parties still have a valid arbitration agreement to resolve the FMLA disputes, which Courts have held time and time again to be arbitrable. The Fees and Costs Provision is not such that its absence would render the

Arbitration Agreement meaningless, and the Parties certainly were not induced to enter into the Arbitration Agreement by the Fees and Costs Provision. Instead, the Parties were induced to enter the Arbitration Agreement to arbitrate their claims, and at least on the part of Plaintiff, to obtain employment by The Miami Heat.

Further, invalidating the Arbitration Agreement as a whole because of a remedial restriction, which may simply be severed, would controvert the strong federal policy in favor of arbitration. *See JPay, Inc.*, 904 F.3d at 929. Based on the foregoing, this Court should compel the Parties to arbitrate pursuant to the Arbitration Agreement.

## **CONCLUSION**

For all of the foregoing reasons, The Miami Heat respectfully requests that this Court enter an order compelling Plaintiff to arbitrate her claims in this action pursuant to the Arbitration Agreement, and abating, or in the alternative, dismissing the action pending such arbitration.

GREENBERG TRAURIG, P.A.
401 E. Las Olas Boulevard
Suite 2000
Fort Lauderdale, Florida 33301
Telephone : (954) 765-0500
Fax (954) 765-1477

By : *s/ Paul B. Ranis*
    PAUL B. RANIS
    Florida Bar No. 64408
    Primary Email: ranisp@gtlaw.com
    Secondary Email: rosr@gtlaw.com
    JOHN L. MCMANUS
    Florida Bar No. 0119423
    Primary Email:  mcmanusj@gtlaw.com
    Secondary  Email:  yeargina@gtlaw.com;
    and FLService@gtlaw.com
    SABRINA NIEWIALKOUSKI
    Florida Bar No. 0123630
    Primary Email: niewialkouskis@gtlaw.com
    Secondary  Email: scottla@gtlaw.com;  and
    FLService@gtlaw.com

*Counsel for Defendant, Miami Heat Limited Partnership and Basketball Properties, Ltd., together d/b/a The Heat Group*

<u>**Co-Counsel for Defendant**</u>

Steven M. Weinger, Esq.
Florida Bar No. 280585
1881 S. Bayshore Dr.
Miami, Florida 33133
Primary Email: WeingerLaw@gmail.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on March 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by ECF System.

*/s/ Paul B. Ranis*
PAUL B. RANIS