UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 20-20540-CIV-MORENO**

VERED YAKOVEE,

              Plaintiff,

vs.

MIAMI HEAT LIMITED PARTNERSHIP
and BASKETBALL PROPERTIES, LTD.,
together d/b/a THE HEAT GROUP,

              Defendants.

_____/

## <u>ORDER GRANTING MOTION TO COMPEL ARBITRATION</u>

Plaintiff, Vered Yakovee, filed a complaint against the Defendant, The Heat Group, for violating her rights under the Family and Medical Leave Act when Defendant terminated her employment as Vice President and Associate General Counsel. At the outset of her employment, the parties agreed to an Arbitration Agreement, which designates the arbitral forum to resolve claims and disputes relating to Plaintiff's employment. Defendant invokes that Agreement now and requests the Court compel arbitration of Plaintiff's claims. The parties dispute whether the Arbitration Agreement is enforceable and who should decide that issue. The Court agrees with the Defendant that the arbitrator is the proper decisionmaker to resolve these issues. Even if this matter was properly before this Court, the Court would find the Arbitration Agreement enforceable.

THIS CAUSE came before the Court upon Defendant's Motion to Compel Arbitration **(D.E. 12)**, filed on **March 6, 2020**.

THE COURT has considered the motion, the response, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion to compel arbitration is GRANTED and the case is dismissed without prejudice pending resolution of the arbitration.[1]  It is also

**ADJUDGED** that all other pending motions are DENIED as moot.

## I.     Background

Plaintiff, Vered Yakovee, was employed by the Defendant, Miami Heat Limited Partnership and Basketball Properties, Ltd., (known as The Heat Group), as an attorney with the title of Vice President and Associate General Counsel from March 2015 until December 19, 2019, when The Heat Group terminated her employment. Plaintiff's complaint alleges that The Heat Group terminated her employment in violation of the Family and Medical Leave Act. On July 20, 2019, Plaintiff took leave pursuant to the FMLA to care for her child. Defendant says it terminated Plaintiff's employment based on her performance.

At the commencement of her employment with The Heat Group, Plaintiff executed an Arbitration Agreement. The Agreement states that "[a]ll arbitration proceedings shall be administered by the American Arbitration Association ("AAA") under its appropriate rules of procedure." It also states that "[t]he Heat Group and the Employee whose name is shown in the signature block below have agreed to the arbitration of any controversy arising out of or relating to the employment relationship or the termination of that relationship, as well as any other claim arising in the workplace environment, to the exclusion of all other forms of dispute resolution." The term "controversy" includes "all claims, disputes, actions or issues of which the employee is

---

[1] When a case is subject to binding arbitration, it is within the district court's discretion whether to stay or dismiss a case. *Envision HealthCare Corp. v. United HealthCare Ins. Co.*, 311 F. Supp. 3d 1322, 1325 (S.D. Fla. 2018) (finding dismissal without prejudice appropriate where case was pending less than two months and the alleged violations occurred within the last five years, such that the statute of limitations would not be implicated); *Wolfe v. Carnival Corp.*, 423 F. Supp. 3d 1347, 1349 (S.D. Fla. 2019) (stating that when all the issues in the case are subject to arbitration, the district court has discretion to dismiss a case, rather than stay it).

or should be aware at the time a demand for arbitration is made and which are related to or arise out of the employment relationship or employment environment." The term also includes, but is not limited to "all common law or statutory causes of action. . . that may be brought under the Family and Medical Leave Act."

The Arbitration Agreement is a stand-alone two-page agreement, which allows either side to institute arbitration of any controversy. It provides that "a prevailing party in an arbitration may be awarded reasonable fees pursuant to any applicable statute." It then states that the "arbitrator shall not otherwise award attorney's fees or costs. Each party will be responsible for one-half of any administrative costs imposed by the AAA." The Agreement adds that The Heat Group will bear the arbitrator's fee.

Defendant filed a motion to compel arbitration of Plaintiff's case, which Plaintiff opposes because, in her view, the agreement is void as against public policy due to the Agreement's costs provision, and because the agreement is unconscionable. The parties also dispute whether the Court or the arbitrator should decide whether the agreement is enforceable.

## II.   <u>Legal Standard and Analysis</u>

The Federal Arbitration Act governs arbitration agreements and "creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Bazemore v. Jefferson Capital Sys.*, *LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115 (11th Cir. 2014)). That being said, the FAA contains a savings clause, which "allows courts to refuse to enforce arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) (explaining grounds for invalidating agreements to arbitrate as "generally applicable contract defenses, such as fraud, duress, or unconscionability."). Thus, "state law generally governs whether an enforceable contract or

agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).

A district court considers three factors when reviewing a motion to compel arbitration: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived. *Hudson v. PIP Inc.*, No. 18-61877, *Report and Recommendation* (S.D. Fla. Mar. 13, 2020) (citing *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009)). The issue in this case is whether there is an enforceable agreement to arbitrate.

Courts apply a summary-judgment-like standard to determine whether an enforceable agreement to arbitrate exists. As in traditional summary judgment motions, an examination of substantive law determines which facts are material. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore*, 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). If, under a summary judgment-like standard, the district court concludes that there is no genuine dispute as to any material fact concerning the formation of the agreement, the Court "may conclude as a matter of law that the parties did or did not enter into an arbitration agreement." *Bazemore*, 827 F.3d at 1333. If the Court finds there is an issue of disputed material fact as to whether the parties entered the agreement, the Court shall proceed to trial on the issue. *Id.* (citing 9 U.S.C. § 4). "If the court concludes that the parties did agree to arbitrate the dispute in question, then the second step is to consider whether legal constraints external to the parties' agreement foreclose the arbitration of those claims." *Lee v. Fly Low, Inc.*, No. 15-20572, 2015 WL 12791478, at *2 (S.D. Fla. May 6, 2015) (quoting *Mims v. Global Credit & Collection Corp.*, 803 F. Supp. 2d 1349, 1353 (S.D. Fla. 2011)).

In this case, there is no dispute that the parties entered the Arbitration Agreement. The question is whether grounds exist at law or in equity for the revocation of the contract, and who should decide those issues, the Court or the arbitrator. The Court will examine the threshold issue of the proper decisionmaker and the grounds asserted by the Plaintiff to determine whether they render the Arbitration Agreement unenforceable.

### A. *Who decides the validity of the Arbitration Agreement?*

The parties dispute whether this Court or an arbitrator must determine the validity of the Arbitration Agreement. The Arbitration Agreement does not contain an express delegation clause, which delegates the decision to an arbitrator. Absent such a clause, the Defendant argues that the incorporation of the AAA Rules serves to delegate the issues regarding the validity of the Arbitration Agreement to the arbitrator. This Agreement specifies that the parties agree to administer the arbitration according to the appropriate set of AAA Rules. Although the Agreement itself does not state which set of AAA Rules applies, the parties agreed to abide by the "appropriate" set. Because this is an employment contract, the AAA Employment Arbitration Rules and Mediation Procedures would appropriately apply.[2] Rule 6(a) of the AAA Employment Arbitration Rules provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence or validity of the arbitration agreement." *See Lee*, 2015 WL 12791478, at *2.

Courts have held that where an arbitration agreement incorporates the AAA Rules, as was done here, there is clear evidence that the parties intended for the arbitrator to decide the issue of a contract's validity. *Spirit Airlines, Inc. v. Maizes*, No. 17-cv-61086, 2017 WL 4155476, at *6

---

[2] Indeed, the AAA Commercial Arbitration Rules similarly provide that the arbitrator decide the validity of the arbitration agreement. *See Spirit Airlines, Inc. v. Maizes*, No. 17-cv-61086, 2017 WL 4155476 at *4 (S.D. Fla. Sept. 19, 2017).

(S.D. Fla. Sept. 19, 2017) (holding that the parties "Agreement, through its adoption of the AAA Rules, clearly and unmistakably delegated to the arbitrator" the question of whether the agreement allows for class arbitration); *Lee*, 2015 WL 12791478, at *2 (holding that by incorporating the AAA rules into the arbitration agreement, the parties "unmistakably agreed to allow the arbitrator to rule on the arbitration agreement's validity."); *Donado v. MRC Express, Inc.*, No. 17-24032, 2018 WL 318473, at *2 (S.D. Fla. Jan. 4, 2018) (holding that by incorporating AAA rules into the arbitration agreement, the parties agreed to delegate decisions regarding the validity of the agreement to the arbitrator). The courts in *Spirit Airlines, Lee,* and *Donado* did not base their decisions on delegation clauses in the respective agreements, but rather on the incorporation of the AAA rules, which establish that the arbitrators should decide the agreements' validity.

Plaintiff relies on *Terminix Int'l Co.,LP v. Palmer Ranch, Ltd. P'ship*, 432 F.3d 1327, 1331 (11th Cir. 2005) to argue that "the question 'whether the parties have a valid arbitration Agreement at all' is for the court, not the arbitrator to decide." *Id.* (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). *Terminix*, however, clarifies that an exception exists, and holds that where the parties incorporated the AAA Rules into an arbitration agreement, the parties had clearly and unmistakably agreed to delegate the decision regarding the agreement's validity to the arbitrator. *Id.* at 1332.

In this case, Plaintiff argues that the reference to the AAA rules in the parties' Arbitration Agreement does not suffice to establish a "clear and unmistakable" intent by these parties to delegate issues regarding the contract's validity to the arbitrator. Plaintiff states that the reference to the AAA Rules is only in passing and not sufficiently strong. This Arbitration Agreement, however, is clear that the parties agreed to administer the proceedings in accordance with the appropriate AAA Rules. That statement does not provide the wiggle room that Plaintiff suggests

it provides. Rather, this case is akin to *Terminix*, where the claim was based on statutory rights under remedial statutes, the agreement agreed to abide by the AAA Rules, and the court held that the issues of arbitrability should be delegated to the arbitrator. *Id.* at 1332. The Court finds the Arbitration Agreement's provision agreeing to administer the proceedings in accordance with the appropriate set of AAA Rules sufficient to delegate the issues regarding the Agreement's validity to the arbitrator.

### B. Is the Arbitration Agreement Void as a Matter of Public Policy?

Having found the arbitrator may properly decide the validity of the Arbitration Agreement, the Court need not decide whether the Agreement is void as against public policy. The Court will nevertheless examine Plaintiff's argument that the Arbitration Agreement is invalid because it precludes her from vindicating her complete rights under the FMLA. The FMLA reads: that "[t]he court in such an action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3). Plaintiff's position is that the Agreement precludes her full recovery of costs under the FMLA, if she prevails, and therefore, the agreement is unenforceable. *See Paladino v. Avnet Comput. Techs.*, 134 F.3d 1054, 1062 (11th Cir. 1998) ("[T]he arbitrability of [Federal statutory] claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies. When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable.").

To decide whether Plaintiff's position is correct, the Court must first examine the Arbitration Agreement in this case, which states:

> A prevailing party in an arbitration may be awarded reasonable fees pursuant to any applicable statute.  The arbitrator shall not otherwise award attorney's fees or costs. Each party will be responsible for one-half of any administrative costs imposed by the AAA. The Heat Group will bear the arbitrator's fee.

The parties both agree that the Court must interpret the plain language of the arbitration agreement. *Haggin v. Allstate Invest. Inc.*, 264 So. 3d 951, 954 (Fla. 4th DCA 2019) ("[I]f the agreement is unambiguous, then the plain language of the contract governs and there is no need for parol evidence of the parties' intent."). The Court must give meaning to each and every word in the agreement. *Equity Lifestyle Prop., Inc. v. Florida Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009); *Nabbie v. Orlando Outlet Owner, LLC,* 237 So. 3d 463, 466 (Fla. 5th DCA 2018) ("An interpretation of a contract which gives reasonable, lawful, and effective meaning to all of the terms is preferred to an interpretation, which leaves a part unreasonable, unlawful, or of no effect.").

To give the word "otherwise" meaning, Defendant argues that attorney's fees and costs must be recoverable when they are allowed by the applicable statute, and not "otherwise." The word "otherwise" means "in a different way or manner" or "in different circumstances". *Otherwise*, Merriam-Webster Dictionary (2019). Defendant reads the second sentence as instructing the arbitrator to not award fees or costs, except as allowed by the statute.  The Court is not persuaded by this interpretation, because the subsequent sentence explicitly states that the parties are sharing equally in the AAA's administrative costs, except for the arbitrator's fee, which The Heat Group will pay. *See Hudson v. PIP, Inc.*, 793 F. App'x 935, 938 (11th Cir. 2019) (finding the arbitration agreement's "fees and costs clause defeats the purpose of the FLSA's attorney's fees and costs provisions—a mandatory 'pay your own' fees and costs clause removes the arbitrator's ability to award a plaintiff what is provided by statute if the plaintiff is successful.").

Plaintiff's interpretation relies on reading the three sentences of the fees and costs provision together. So read, the first sentence instructs the arbitrator to award attorney's fees as allowed by

the statute.  Then, the second sentence instructs the arbitrator to not "otherwise" award fees (except as set forth in the preceding sentence) or costs (altogether).

Plaintiff relies on *Hudson*, 793 F. App'x at 936, where, as noted, the Eleventh Circuit held an arbitration clause requiring each party to pay its own fees and costs unenforceable because the FLSA allows fees and costs as part of the plaintiff's award. *Paladino*, 134 F.3d at 1059 (holding that the terms of an arbitration clause regarding remedies must be "fully consistent with the purposes underlying any statutory claims subject to arbitration.").

The Court, however, need not decide this issue because it is for the arbitrator to decide and even if the fees and costs provision is unenforceable due to a failure to provide Plaintiff with remedies fully consistent with the statute, the provision is severable as set forth below.

### 1. Is the fees and costs provision severable?

Assuming that the costs provision is unenforceable, the provision is severable from the Arbitration Agreement. The Eleventh Circuit held that "[a] court should deny the motion to compel arbitration only where the invalid terms of the arbitration clause render the entire clause void as a matter of state law." *Terminix*, 432 F.3d at 1331. In other words, "if the offensive terms are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement." *Id.* Severability is decided under state law. *Id.* The issue in this case is whether the costs provision is severable, despite the Agreement's lack of a severability clause.

Under Florida law, "a bilateral contract is severable where the illegal portion of the contract does not go to its essence, and where, with the illegal -portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Hudson*, No. 18-61877-CIV-MORENO at *6 (S.D. Fla. Mar. 13, 2020) (quoting *Local 234 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada v. Henley & Beckwith, Inc.*, 66 So. 2d 818, 821-22 (Fla. 1953)); *see also J.R.D. Mgm't*

*Corp. v. Dulin*, 883 So. 2d 314, 316 (Fla. 4th DCA 2004) (explaining the severability test as whether the parties gave "a single assent to the whole transaction, or [whether] they assent[ed] separately to several things."). In this case, the agreement states that Plaintiff's employment with the Defendant is "sufficient consideration for the employee's agreement to arbitrate." Defendant employed Plaintiff for four years and by the terms of the agreement, even if the costs provision is eliminated, there is still a valid contract.

Plaintiff relies on *Gessa v. Manor Care of Fla., Inc.*, 86 So. 3d 484, 490-91 (Fla. 2011) and *Schotts v. OP Winter Haven*, 86 So. 3d 456, 471, 478-81 (Fla. 2011) to argue the costs provision in this Arbitration Agreement goes to the "essence of the agreement" and therefore, is not severable. In *Gessa*, the Florida Supreme Court found the agreement's restrictions on non-economic damages and punitive damages went to the "financial heart of the agreement." *Id.*, 86 So. 3d at 490. Likewise in *Schotts*, the Florida Supreme Court found that although the agreement contained a severability clause, the limitation of remedies provision requiring the imposition of specific arbitration rules was not severable, because it goes to "the very essence of the agreement."*Id* at 278.

In this case, even if the costs provision is unenforceable, the question is whether it can be severed absent a severability clause. This costs provision is not as essential to the Agreement as Plaintiff suggests. A plain reading of the language of the Arbitration Agreement indicates that its main purpose is to define the forum for resolving disputes pertaining to the Plaintiff's employment. It establishes that Plaintiff's employment is consideration for the Agreement to arbitrate disputes. In this case, the costs provision does not represent the only, or even the primary, reason for the parties to have agreed to arbitrate disputes. Certainly, it cannot be the case as the Defendant agreed to absorb a large portion of the arbitral costs by agreeing to be solely responsible for paying the

arbitrator's fee and half of the administrative costs, regardless of who is the prevailing party in an arbitration. The Agreement allows the Plaintiff to recover her statutory damages, reasonable attorney's fees, and some of her costs. *See Hochbaum v. Palm Garden of Winter Haven, LLC*, 201 So. 3d 218, 222-23 (Fla. 2d DCA 2016) (finding an attorney's fees provision that violated public policy to be severable, despite the lack of a severability clause, because the offending clause did not go to the essence of the agreement). Accordingly, assuming the costs provision is unenforceable, it is severable under Florida law.

### C.  Is the arbitration agreement unconscionable?

Plaintiff argues the Arbitration Agreement is unconscionable, because Defendant presented her with a "take it or leave it" proposition, because she had no time to review the document or seek legal counsel from an employment lawyer. She also did not have an opportunity to negotiate the terms. It is well-settled that an arbitrator decides whether an agreement is unconscionable. *Senior Servs. of Palm Beach, LLC v. ABCSP, Inc.*, No. 12-80226-CIV, 2012 WL 2054971, at *3 (S.D. Fla. June 7, 2012) (dismissing case for arbitrator to determine whether the arbitration clause was unconscionable when AAA rules were referenced in arbitration agreement).

Even if this issue was properly before the Court, the Court does not find the Arbitration Agreement unconscionable under Florida law. An arbitration agreement is unenforceable under Florida law if procedurally and substantively unconscionable. *See Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 727 (Fla. 4th DCA 2003). While a party must meet both prongs to show unconscionability, they need not be present "to the same degree, and both should be evaluated interdependently rather than as independent elements." *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1161 (Fla. 2014).

As to procedural unconscionability, Plaintiff argues that, although she is an attorney, Defendant did not permit her time to review the document, seek legal counsel, or negotiate the

11

terms. These allegations are insufficient to amount to procedural unconscionability. *See Spurgeon v. Marriott Int'l, Inc.*, No. 16-24612-CIV-ALTONAGA, 2017 WL: 896301, at *5-6, n.3 (S.D. Fla. Mar. 7, 2017) (holding that arbitration agreement was not procedurally unconscionable where plaintiff failed to articulate any specific reason she felt rushed to sign the agreement, considering the relevant documents did not convey any sense of urgency, and where there was no evidence that even though plaintiff had no ability to negotiate it, she lacked employment alternatives); *see also Citi Cars, Inc. v. Nextgear Cap. Inc.*, No. 17-CIV-22190, 2018 WL 1521770, at *8 (S.D. Fla. Jan. 22, 2018) (holding that arbitration agreement was not procedurally unconscionable even though plaintiff alleged that he did not have an opportunity to read it because plaintiff may accept terms via action, even where plaintiff did not actually read the provisions).

In this case, the Plaintiff has not presented any evidence, via affidavit or otherwise, to explain any specific reason she felt rushed to sign the agreement, had no ability to negotiate it, or lacked employment alternatives. This stand-alone Arbitration Agreement was sufficiently straightforward for an executive to understand. It was not buried in fine print. Given these circumstances, even if this issue was properly before the Court, the Court does not find the agreement is procedurally unconscionable.

Having found there is no procedural unconscionability, the Court need not address whether the agreement is substantively unconscionable, as Plaintiff must establish both. Nevertheless, in examining the substantive unconscionability issue, the Court also does not find it meets that requirement to render the agreement unenforceable. Plaintiff argues that the Arbitration Agreement is substantively unconscionable because it requires her to arbitrate all her claims, while only requiring the Defendant to arbitrate counterclaims that it "is or should be aware [of] at the time a demand for arbitration is made." She adds that her inability to recoup her full costs also

supports substantive unconscionability. Plaintiff's argument attempts to cast the agreement as one-sided and neglects to address the provision in the Arbitration Agreement, which requires that any claims "arising in the workplace environment" be subject to arbitration. In addition to requiring the Defendant to bring its counterclaims in arbitration, the agreement also encompasses all claims arising in the workplace environment. *Spurgeon*, 2017 WL 896301, at *6 (noting that the arbitration agreement was not substantively unconscionable even though it only required arbitration for a portion of the defendant employer's potential claims and required arbitration of *all* of a plaintiff employee's claims).

Assuming the agreement was one-sided, which it is not, that would not necessarily equate with a finding of substantive unconscionability.  *See Tranchant v. Ritz Carlton Hotel Co., LLC*, No. 10-00233-CIV, 2011 WL 1230734, at *6 (M.D. Fla. Mar. 11, 2011) (upholding a one-sided arbitration agreement because it was limited in scope, did not require plaintiff to surrender to arbitration all claims, only those relating to termination, did not impose substantial costs on plaintiff, and provided for discovery consistent with the arbitral rules governing the agreement.); *Avid Eng'g, Inc. v. Orlando Marketplace, Ltd.*, 809 So. 2d 1, 5 (Fla. 5th DCA 2001) (holding that one-sided arbitration provision was not substantively unconscionable because it "[did] not require [plaintiff] to surrender any of its claims or damages that it could seek in court," but "merely substitute[d]the forum for deciding those claims and damages."). This Arbitration Agreement did not require Plaintiff to surrender her claims; it merely required her to commit to resolving them in an arbitral forum. The Agreement also does not impose substantial costs on the Plaintiff, as the Defendant agreed to pay the arbitrator's fee in full and half of the AAA's administrative costs, regardless of who prevailed. The Agreement also required the Defendant to arbitrate claims.

Certainly, the agreement does not strike the Court as "outrageously unfair or otherwise shock the judicial conscience." *Tranchant*, 2011 WL 1230734, at *7.

Even if the Court were to be the proper decisionmaker, the Court does not find the requirements of procedural and substantive unconscionability are met to render the arbitration agreement unenforceable. For these reasons, the Court compels arbitration and dismisses this case without prejudice.

DONE AND ORDERED in Chambers at Miami, Florida, this <u>30th</u> of April 2020.

_____
      FEDERICO A. MORENO
      UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record